1  Christopher Sproul (State Bar No. 126398)
2  Stuart Wilcox (State Bar No.  327726)
   ENVIRONMENTAL ADVOCATES
3  5135 Anza Street
   San Francisco, California 94121
4  Telephone:  (415) 533-3376
   Facsimile:  (415) 358-5695
5  Emails:  csproul@enviroadvocates.com
   wilcox@enviroadvocates.com
6
   Ben Harris (State Bar No. 313193)
7  LOS ANGELES WATERKEEPER
   120 Broadway, Suite 105
8  Santa Monica, California 90401
   Telephone: (310) 394 - 6162
9  Email: ben@lawaterkeeper.org

10 Attorneys for Plaintiff
   Los Angeles Waterkeeper

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JS-6

**F I L E D**
CLERK, U.S. DISTRICT COURT

12/5/2022

CENTRAL DISTRICT OF CALIFORNIA
BY:___Vanessa Figueroa___ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES WATERKEEPER,

       Plaintiff,

  v.

AMERICAN RECLAMATION, INC., and

JOHN R. GASPARIAN,

             Defendants.

Case. No. 21-CV-1140-DDP-(Ex)

CONSENT DECREE

    **WHEREAS**, Los Angeles Waterkeeper (hereinafter "LA Waterkeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Los Angeles River and Pacific Ocean;

    **WHEREAS**, American Reclamation, Inc. and John R. Gasparian ("Defendants" or collectively, "American Reclamation") own, operate, and/or have control over operations at the South Coast Recycling Facility located at 4560 Doran Street, Los Angeles, CA 90039 ("the Facility");

**WHEREAS**, Defendants perform recycling and associated activities, including minor vehicle maintenance and fueling at the Facility;

**WHEREAS**, storm water flows off-site from the Facility and combine with storm water from neighboring facilities to drain into the Los Angeles River;

**WHEREAS,** discharges from the Facility are presently regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit NO CAS000001 adopted by the California State Water Resources Control Board ("State Board") via Water Quality Order No. 2014-0057-DWQ ("2015 Industrial Storm Water Permit"), which became effective July 1, 2015, and were previously regulated by the previous version of the Industrial Stormwater Permit adopted by Water Quality Order No. 97-03-DWQ ("1997 Industrial Storm Water Permit"). Discharges from the Facility are further regulated by the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA");

**WHEREAS,** LA Waterkeeper alleges that the Defendants have discharged or have caused pollutants to be discharged to waters of the United States from the Facility in a manner violating the 2015 Industrial Storm Water Permit and the 1997 Industrial Storm Water Permit. Furthermore, LA Waterkeeper alleges that the Defendants have failed to comply with various reporting and monitoring requirements of these permits.

**WHEREAS,** on November 9 and 10, 2020, LA Waterkeeper provided notice of violations of the CWA by Defendants and of LA Waterkeeper's intention to file suit against Defendants to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region IX; the Executive Director of the State Board; the Executive Officer of the California Regional Water Quality Control Board, Region 3 ("Regional Board"); the U.S. Attorney General, and the Defendants ("Notice Letter") as required by the CWA, 33 U.S.C. § 1365(b)(1)(A);

**WHEREAS**, on February 8, 2021, LA Waterkeeper filed a complaint against Defendants in the United States District Court, Central District of California alleging ongoing violations of the CWA;

**WHEREAS**, this Consent Decree shall be submitted to the EPA and United States Department of Justice ("DOJ") for the statutory review period pursuant to 33 U.S.C. §1365(c) and 40 C.F.R. § 135.5;

**WHEREAS**, LA Waterkeeper and Defendants have agreed that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint without further proceedings and without any admission of liability on the part of Defendants; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

**I. GENERAL OBJECTIVES**

1.   The objectives of this Consent Decree are:

a.   To ensure that Defendants continue to improve their efforts to comply with the CWA and with the 2015 Industrial Storm Water Permit;

b.   To ensure that Defendants continue to use, implement, and improve ways, means, and methods to prevent or reduce the discharge of pollutants in storm water runoff from the Facility; and

c.   To further the goals and objectives of the CWA.

3

## II. DEFINITIONS

2.      Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

"Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

"Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

"Design Storm" means the ten year, 24 hour storm event (*i.e.*, a 24 hour rainfall event with a statistically estimated return frequency of once every ten years) as defined by the National Weather Service in Technical Paper No. 40, "Rainfall Frequency Atlas of the United States," May, 1961, or equivalent regional or State rainfall probability information developed from this source.

"Dry Season" means the four-month period beginning May 1st of any given year and ending September 30th of the same year.

"Effective Date" means the effective date of this Consent Decree, which shall be the date it is entered by the Court.

"Facility" means the Defendants' facility located at 4560 Doran Street, Los Angeles, CA 90039.

"Metal Yard" means the portion of the Facility so defined and delineated by the Defendants' Storm Water Pollution Prevention Plan ("SWPPP").

"Paper Yard" means the portion of the Facility so defined and delineated by the Defendants' SWPPP.

"Wet Season" means the seven-month period beginning October 1st of any given year and ending April 30th of the following year.

## III. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of the claims asserted by LA Waterkeeper pursuant to CWA section 505(a), 33 U.S.C. § 1365(a), 28 U.S.C. §§ 1331, 1355, and 1367. Venue is proper in this judicial district pursuant to section CWA §§ 309(b), 505(c); 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. § 1391(b) and (c). The parties waive any and all objections that they may have to the Court's jurisdiction to enter and enforce this Consent Decree. The Complaint states claims upon which relief may be granted pursuant to CWA section 505, 33 U.S.C. § 1365. LA Waterkeeper has standing to bring this action.

## IV. EFFECT OF CONSENT DECREE/RELEASE OF CLAIMS

4.      LA Waterkeeper does not, by their consent to this Consent Decree, warrant or aver in any manner that Defendants' compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation.

5.      This Consent Decree is neither a permit nor a modification of an existing permit under any federal, state, or local law and in no way relieves Defendants of their responsibilities to comply with all applicable federal, state and local laws and regulations.

6.      Compliance with this Consent Decree, including all monetary payments due under this Consent Decree (including but not limited to the payment of any stipulated payments) and the completion of all remedial measures required pursuant to this Consent Decree resolves LA Waterkeeper's civil claims for the violations alleged against Defendants in this Action.

7.      LA Waterkeeper's Release: Upon the Effective Date of this Consent Decree, LA Waterkeeper hereby releases Defendants, their insurers, and their

officers, employees and successors and assigns, from all CWA violations alleged in the Complaint up to and including the Effective Date of this Consent Decree. Except for claims for Defendants' failure to comply with this Consent Decree, LA Waterkeeper further releases Defendants, their insurers, and their successors and assigns, from all claims pertaining to alleged violations of the CWA that may occur due to discharges of storm water from the Facility between the Effective Date and the termination of this Consent Decree.

## V. APPLICABILITY

8.   The provisions of this Consent Decree apply to and bind LA Waterkeeper and Defendants (collectively, "Parties"), including any successors or assigns. The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to their terms.

9.   The Parties agree to be bound by this Consent Decree and not to contest their validity in any subsequent proceeding to implement or enforce their terms. By entering into this Consent Decree, Defendants do not admit liability for any purpose as to any allegation or matter arising out of the Action. Nothing in this Consent Decree shall constitute an admission of any fact or a waiver of any right unless specifically set forth herein.

10.   No change in ownership or corporate or other legal status of Defendants or any transfer of Defendants' assets or liabilities shall in any way alter the responsibilities of Defendants or any of their successors or assigns thereof under this Consent Decree. In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of their agents, servants, contractors, employees, successors or assigns to take actions necessary to comply with this Consent Decree, unless such actions were prevented by a force majeure.

11.    Except as otherwise provided in this Part, the sale or transfer of ownership or operation of any portion of the Facility does not relieve Defendants of their obligations under this Consent Decree. Not later than thirty (30) days prior to sale or transfer of ownership or operation of any portion of the Facility, Defendants shall give written notice of this Consent Decree to each purchaser or successor in interest. Defendants also shall give written notification to LA Waterkeeper, in accordance with Part XIV (NOTICES AND SUBMISSIONS), of the anticipated sale or transfer of ownership or operation of the Facility at least thirty (30) days prior to the scheduled date of such sale or transfer and may seek from the Court a modification of this Consent Decree that would transfer responsibility for compliance with some or all of these provisions to their successor. The Court shall grant such request if the successor is ready, willing and able to fully implement obligations the successor would assume under this Consent Decree.

## VI. DISCHARGE LIMITATIONS

13.    <u>Non-Storm Water Discharge Prohibition</u>: Defendants shall not discharge any wastewater constituting non-stormwater from the Facility into the Los Angeles River. Any such discharges shall be considered a breach of this Consent Decree.

14.    <u>Storm Water Pollutant Limit and Reduction Goals</u>: Pollutants in storm water discharges from the Facility shall not exceed the numeric action level ("NAL"), or numeric effluent limitation ("NEL"), or Regional Water Quality Control Board, Region 4 Basin Plan Levels in Exhibit 1. In addition, Defendants shall make reasonable progress towards reducing the levels of pollutants in storm water discharges below the water quality standard-based levels in Exhibit 2.

## VII. REMEDIAL MEASURES

**A.    Storm Water Pollution Control Measures**

15.    Defendants shall develop and implement the Best Management

Practices ("BMPs") identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the 2015 Industrial Storm Water Permit or the then-applicable Industrial Storm Water Permit. Specifically, Defendants shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility sufficient to reduce the levels of pollutants in storm water discharges below the NAL, NEL, and Basin Plan levels in Exhibit 1.

16. <u>Structural BMPs</u>: Defendants shall implement structural BMP measures in accord with the following paragraphs.

17. <u>Structural BMPs Plan</u>: Within 30 days of the Effective Date, Defendants shall provide to LA Waterkeeper a plan for installing structural BMPs at the Facility that are designed to treat storm water discharges and reduce pollutant levels commensurate with (a) Best Available Technology Economically Achievable ("BAT") and the Best Conventional Pollutant Control Technology ("BCT"), (b) to a level necessary to ensure that pollutant levels in storm water discharges do not exceed NALs, NELs, and Basin Plan levels in Exhibit 1 attached to this Consent Decree, and (c) to a level equating to reasonable progress towards elimination of storm water discharges containing levels of pollutants exceeding applicable water quality standard based values set forth in Exhibit 2 attached to this Consent Decree ("Structural BMPs Plan"). The Structural BMPs Plan shall specify installation of BMPs by no later than November 1, 2022. Structural BMPs shall include installing sufficient storm water retention and treatment capacity to ensure that all storm water from the site is treated prior to discharge in a Design Storm ("Treatment System"). Such Treatment System shall include polymer-assisted coagulation, followed by settling and filtration under pressure. Defendants will do bench testing to determine the appropriate filtration media that will allow Defendants to meet applicable water quality standards with the Treatment System.

8

In addition, Defendants shall install slot drains and pumps and make retrofits to existing Facility drainage to capture storm water runoff from the Paper Yard and Metal Yard driveways where they discharge to the Doran Street public right-of-way. The redesigned Facility drainage will route this storm water and all other storm water, including storm water from the roofs of the structures at the Facility, to the Treatment System via rain gutters, slot drains, pumps, and other conveyance methods. The Treatment System will then discharge this storm water from the Facility through a swale or swales. The Treatment System shall be designed to treat storm water runoff generated by an 85th percentile, 24-hour storm event (as defined in the 2015 Industrial Storm Water Permit Section X.H.6).

20. <u>Structural BMPs Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' Structural BMPs Plan to provide Defendants with comments. Within fifteen (15) days of Defendants' receipt of LA Waterkeeper's comments, Defendants shall accept and incorporate LA Waterkeeper's comments into the Structural BMPs Plan, or shall provide LA Waterkeeper with a written explanation if Defendants decline to develop and/or implement any of LA Waterkeeper's recommendations. Any disputes as to the adequacy of the Structural BMPs Plan shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

21. <u>Structural BMPs Plan Implementation:</u>  By November 1, 2022, Defendants shall install the Treatment System at the Facility that is approved pursuant to the preceding paragraph. Defendants shall thereafter properly operate and maintain the Treatment System for the life of the Consent Decree, including using the Treatment System to treat all storm water runoff generated by storms equaling or less than the 85th percentile, 24-hour storm event (as defined in the 2015 Industrial Storm Water Permit Section X.H.6).

22. <u>Good Housekeeping Practices</u>: Defendants shall implement the

following good housekeeping BMPs.

      i.    <u>Bin Removal</u>: remove any bins owned by Defendants, if any, from all public rights-of-way.

      ii.    <u>Patching</u>: Prior to the commencement of Wet Seasons each year that this Consent Decree is in effect, Defendants shall patch all cracks in the impervious (paved) ground surface at the Facility.

      iii.    <u>Sweeping</u>: Commencing on the Effective Date Defendants shall commence sweeping of any accessible impervious ground surface at the Facility using a PM-10 compliant regenerative sweeper (*i.e.*, a sweeper that uses bursts of air to mobilize and vacuum particulate matter) and use it every work day throughout the Metal Yard, the Paper Yard, and on the adjacent stretches of Doran Street, San Fernando Road West, and the alley along the west side of the Paper Yard. For any impervious ground surfaces at the Facility not accessible with a mechanical regenerative sweeper, Defendants shall hand sweep these areas on the same schedule.

      iv.    <u>Fuel Tank Berm Installation</u>: Within two (2) months of the Effective Date, Defendants shall install berms to prevent run-on over the surface around the Facility's diesel fuel tank. Defendants shall properly secure the hose and nozzle and provide a spill kit at the fueling station, with instructions in using it to staff.

      v.    <u>Site Wash Down Procedures</u>: Commencing on the Effective Date, Defendants shall not wash down industrial areas unless it collects and contains on site all wash water, and ensures proper and authorized disposal of all waste water into the Treatment System.

      vi.    <u>Inspections, and Site and BMP Operations</u>: Commencing on the Effective Date, Defendants shall inspect operation work areas daily

to ensure adequate implementation and maintenance of good housekeeping/best management practices designed to minimize pollution levels in storm water discharges from the Facility.

vii.   Discouragement of Bin Storage: Commencing on the Effective Date, Defendants will post and maintain notices to third parties that they may not leave bins in the public street immediately adjacent to the Facility. Additionally, Defendants will periodically inspect the public street immediately adjacent to the Facility and will inform any third parties that Defendants observe attempting to leave bins there that they are not permitted to do so.

23.   Operation and Maintenance of Storm Water System: Defendants shall implement the following storm water system conveyance BMPs.

i.   Commencing on the Effective Date, Defendants shall limit storm water discharges to only the Designated Discharge Locations designated in their Storm Water Pollution Prevention Plan ("SWPPP") for the Facility.

ii.   Within thirty (30) days of the Effective Date, Defendants shall inspect the perimeter of the Facility and implement such measures as are necessary to prevent water from discharging from the Facility perimeter at any location other than Designated Discharge Locations.

iii.   Prior to the 2022-2023 Wet Season, Defendants shall have all components of the Facility's Storm Water conveyance system cleaned.

iv.   Defendants shall clean the Facility's storm water conveyance system once per month during the Wet Season, or more as necessary to comply with the 2015 Industrial Storm Water Permit

11

and this Consent Decree.

      v.  Defendants shall regularly monitor and maintain all of the Facility's Storm Water conveyance system and treatment or retention structures in a manner that ensures they are kept free of debris and materials not related to the control and treatment of storm water.

     vi.  From June 30 to September 30 of each year that this Consent Decree is in effect, Defendants shall cover each storm water drop inlet that remains on the Facility with a solid material that will prevent dust and solids from collecting in the inlet.

**B.   Action Plan for Further Reduction of Pollutants in Discharges**

24.   <u>Action Plan for Table 1 Exceedances</u>: If any storm water sample contains a level of contaminant above the NAL, NEL or Basin Plan levels in Exhibit 1, Defendants shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan"). In any year that an Action Plan is required, Defendants shall submit it to LA Waterkeeper by June 30 following the Wet Season.

25.   <u>Action Plan Requirements</u>: Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the NAL, NEL or Basin Plan levels in Exhibit 1, (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating storm water prior to discharge from the Facility, that will be implemented to achieve compliance with the NAL, NEL, or Basin Plan levels in Exhibit 1, and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of each year that the Consent Decree is in effect (*i.e.*, prior to the next Wet Season). The following BMPs should generally be evaluated to attain NAL, NEL, and Basin Plan levels in Exhibit 1 and make reasonable progress towards attainment of Exhibit 2 water quality standard-based

levels:

a.  <u>Hydraulic Controls</u>:  installation of additional berms or equivalent structural controls (if necessary to reduce or prevent storm water from flowing into locations other than through the engineered storm water conveyance system or storm water retention or treatment facilities).

b.  <u>Detention</u>: On-site retention or detention of storm water in the treatment system for sufficient detention time so as to reduce pollutants in the discharge.

c.  <u>Sweeping</u>: The increased/more frequent use of regenerative sweepers and manual sweeping in otherwise inaccessible areas.

d.  <u>Treatment System</u>: installing additional or improving existing treatment systems that would provide more effective filtration treatment of storm water prior to discharge than currently installed systems.

e.  <u>Evaluation of BMPs</u>:  replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

f.  Such other additional BMPs as Defendants deem appropriate for evaluation.

26.  <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' Action Plan to provide Defendants with comments. Within fifteen (15) days of Defendants' receipt of LA Waterkeeper's comments on the Action Plan, Defendants shall accept and incorporate LA Waterkeeper's comments of recommended additional BMPs into the Action Plan or shall provide LA Waterkeeper with a written explanation if Defendants decline to develop and/or implement any of LA Waterkeeper's recommended additional BMPs. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for

13

implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

27.  Defendants shall contact LA Waterkeeper at least one week in advance of the deadline to request an extension of the deadline, if necessary, to implement any structural BMPs requiring agency approval. LA Waterkeeper's consent to Defendants' requested extension shall not be unreasonably withheld.

28.  When an Action Plan is completed and approved by LA Waterkeeper or finalized pursuant to Dispute Resolution, Defendants shall revise their SWPPP and/or Monitoring Implementation Plan ("MIP") as applicable within thirty (30) days to reflect the changes required by the Action Plan. Defendants shall promptly notify LA Waterkeeper in writing when the Action Plan has been completely implemented. Defendants shall implement any Action Plan approved pursuant to this paragraph as a requirement of the Consent Decree.

**A. Site Mapping**

29.  Site Changes and Mapping: Within sixty (60) days following implementation of any new structural BMPs or changed industrial operations at the Facility, Defendants shall submit to LA Waterkeeper a revised Site Map. The Site Map shall clearly identify the property boundaries, ground type (pervious or impervious) on all portions of the Facility; berms, dikes, walls and all other structures controlling the flow of surface water, all components of the Facility storm water conveyance and treatment system, including but not limited to all storm water pipes, drop inlets, any storm water storage or treatment infrastructure (as well as the capacity of such infrastructure) and all other physical structures or items relevant under this Consent Decree. The Site Map shall further indicate the direction and pattern of storm water flows at and off the Facility.

30.  Designated Discharge Points:  Within sixty (60) days of the Effective

14

Date or within thirty days of any material changes to the Facility, to the extent not already implemented, Defendants shall identify on the Site Map every location at which storm water and non-storm water is known to be discharged or which may potentially be discharged including all driveways and swales ("Designated Discharge Points or Designated Discharge Locations"). Each Designated Discharge Point or Discharge Location shall be numbered and clearly labeled on the Site Map.

31. <u>Designation of Storage Areas</u>:  Within sixty (60) days of the Effective Date or within thirty days of any material changes to the Facility, to the extent not already implemented, the outdoor storage areas at the Facility where materials used at the Facility are stored ("Material Storage Areas") shall be designated on the Facility's Site Map.

32. <u>Designation of Industrial Activity Areas</u>:  Within sixty (60) days of the Effective Date or within thirty days of any material changes to the Facility, to the extent not already implemented, the portion of the Facility where industrial activities occur shall be designated on the Facility's Site Map as the "Industrial Activity Areas."

33. <u>Pollutant Generating Activities</u>:  Within sixty (60) days of the Effective Date or within thirty days of any material changes to the Facility, to the extent not already implemented, the Site Map for the Facility shall fully describe all industrial activities that generate dust, particulates or other pollutants that may be deposited within the Facility's boundaries and identify their discharge locations and the characteristics of such dust, particulate and other pollutants; and a description of the primary areas of the Facility where dust, particulate and other pollutants would settle.

34. <u>Designation of All Sampling Locations</u>: Within sixty (60) days of the Effective Date or within thirty days of any material changes to the Facility, to the

15

extent not already implemented, the Site Map shall set identify precisely where storm water samples are to be collected.

**VIII. SAMPLING, MONITORING, INSPECTION & REPORTING**

**B. Sampling Program**

35.  Defendants shall collect storm water discharge samples from each Discharge Point at the Facility according to the following sampling schedule:

(a)  First Wet Season Sampling Program: during the first Wet Season after constructing and commencing operation of the Treatment System, and except as set forth below in this paragraph, Defendants shall collect storm water samples from discharges generated by five Qualifying Storm Events (as defined by the 2015 Industrial Storm Water Permit or then-applicable NPDES permit) per Wet Season from each Discharge Point at the Facility (*i.e.*, shall take samples on five separate days during which storm water discharges from the Facility are occurring). If four consecutive samples from each of the Discharge Points reflect pollutant levels below the water quality standard-based levels set forth in Exhibit 2 for any parameter sampled, Defendants need not conduct additional sampling for such parameter.

(b)  During subsequent Wet Seasons during the term of this Consent Decree, Defendants shall collect storm water samples from discharges generated by four Qualifying Storm Events per Wet Season from each Discharge Point at the Facility.

(c)  Defendants shall analyze each storm water sample collected for each of the parameters listed in Exhibit 1. Should operations change at the Facility, Defendants shall conduct sampling for any additional priority pollutants listed in 40 C.F.R. § 131.38 likely to be present in Defendants' storm water discharges as a result of the changed operations. In addition,

16

to the extent that this would require sampling of any additional parameters, Defendants shall analyze each storm water sample collected for any pollutants identified in any pollutant source assessment, any pollutant identified as one associated with the Defendants' applicable SIC code, and any pollutants for which a Numeric Effluent Limitation has been established.

(d) Where Defendants discharge storm water into a storm drain inlet or catch basin, Defendants may choose to collect a sample below any insert or treatment system. If Defendants chooses not to collect a post-filtration or post-treatment sample, the quality of storm water samples entering a storm drain inlet or catch basin containing a fabric insert shall be considered the same as a sample collected below the insert.

36.  While this Consent Decree is in effect, Defendants shall take all storm water samples from Qualifying Storm Events within the first four hours that Defendants' staff observes flow at the Discharge Points during any given storm event.

37.  If Defendants do not collect the required number of samples from the designated sampling locations due to lack of discharge, Defendants shall provide rain gauge data for the Wet Season to LA Waterkeeper along with a copy of the required observations stated in Paragraphs 40-43 for any day on which precipitation was recorded at the rain gauge, but no samples were collected by Defendants. Defendants shall provide this rain gauge data to LA Waterkeeper by June 1 following the Wet Season in which insufficient samples were collected.

38.  Defendants shall have all storm water samples collected pursuant to this Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times. Defendants shall direct the laboratory to conduct analysis sufficient to

detect individual constituents at or below the water quality standard-based levels set forth in the attached Exhibit 2.

39.   Defendants shall provide to LA Waterkeeper complete results from Defendants' sampling and analysis of storm water discharges within fourteen (14) days of receipt of the laboratory report from each sampling event. Defendants shall upload all storm water sample results to SMARTS as required by the 2015 Industrial General Permit or then-applicable NPDES permit.

### B. Visual Observations

40.   <u>Wet Weather Visual Observations</u>: During the life of this Consent Decree, Defendants shall conduct visual observations at all Designated Discharge Locations during every rain event that produces a discharge. In addition, Defendants shall observe all potential discharge locations on the perimeter of the Facility to determine if discharge of storm water is occurring.

41.   During such wet weather visual observations, appropriately trained member(s) of Defendants staff shall monitor for the presence of visually observable oil sheens in storm water discharges and/or discolored or turbid storm water discharges. Defendants shall take representative photographs of storm water discharges during all observed rain events, including photographs of any visually observable oil sheens in storm water discharges and/or discolored or turbid storm water discharges. These photographs and records shall be made available to LA Waterkeeper within seven (7) days upon written request.

42.   <u>Dry Weather Visual Observations</u>: At least once per week during the Wet Season and once per month during the Dry Season, appropriately trained employees of Defendants shall conduct dry weather visual inspections of the Facility. Such inspections shall include driveways, outdoor storage areas, and all Industrial Activity Areas. All Designated Discharge Locations shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily

sheens upon any standing water, and other materials associated with operations at the Facility. Such inspections shall further include observations of all storm water BMPs at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility (*e.g.*, an absence of oil stains on paved or unpaved surfaces, absence of particulate debris or other debris on ground surfaces, absence of oil, or particulate debris or grit or other debris in storm water conveyance structures). Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

43.  During such dry weather visual inspections, appropriately trained member(s) of Defendants' staff shall photo document their visual observations of the status of BMPs. These photographs and records shall be made available to LA Waterkeeper within seven (7) days upon written request.

### C. Compliance Monitoring

44.  <u>Site Inspections</u>. LA Waterkeeper and its representatives may conduct two (2) site inspections in the first year of the Consent Decree and one (1) site inspection per year at the Facility during the remaining term of this Consent Decree. The site inspections shall occur during normal business hours and LA Waterkeeper shall provide Defendants with forty-eight (48) hours' notice prior to each site inspection. LA Waterkeeper is entitled to cancel these site inspections before their scheduled start time in the event of a lack of rainfall, and such cancellation shall not constitute an inspection for purposes of this paragraph.

45.  During the site inspections, LA Waterkeeper and/or its representatives shall be allowed access to the Facility's SWPPP, MIP, and other monitoring records, reports, and sampling data for the Defendants' Facility. During the site inspections, LA Waterkeeper and/or its representatives may collect samples of discharges from the Facility. A certified California laboratory shall analyze storm

water samples collected by LA Waterkeeper and copies of the lab reports shall be provided to Defendants within five (5) business days of receipt. At the request of Defendants, the samples shall be split and one half provided to Defendants so as to allow Defendants to have their own certified California laboratory analyze the samples, in which case Defendants shall provide the laboratory results to LA Waterkeeper within five (5) business days of receipt. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection. If LA Waterkeeper takes photographs and/or video recording, LA Waterkeeper shall provide Defendants with the photographs and/or video within fourteen (14) calendar days after the Site Inspection.

**D. Cleaning, Maintenance, and Inspection Logs**

46.  During the life of this Consent Decree, Defendants shall keep contemporaneous logs documenting the performance of cleaning and maintenance activities performed pursuant to paragraph 23 and inspection activity performed pursuant to paragraphs 22 and 23. The logs shall indicate the staff that completed the cleaning, maintenance, or inspection activity and the date the activity was performed. The logs shall further include notes sufficient to describe the completed activity and any pertinent information that the activity yielded (*e.g.*, such as whether BMPs are an adequate condition or whether the Facility is free of oil, debris, or other conditions likely to lead to pollutant loading in storm water discharges).

**E. Reporting**

47.  During the life of this Consent Decree, Defendants shall provide LA Waterkeeper with a copy of all documents pertaining to the 2015 Industrial Storm Water Permit submitted to or received from the Regional Board or the State Board concerning the Facility, including all documents and reports submitted to the Regional Board as required by the 2015 Industrial Storm Water Permit. Documents

and reports sent by Defendants to the Regional Board or State Board shall be electronically mailed to LA Waterkeeper contemporaneously with submission to the Regional Board or State Board. Documents received by Defendants from the Regional Board or State Board shall be electronically mailed to LA Waterkeeper within three (3) business days of receipt.

## IX. EMPLOYEE TRAINING

48.   Within thirty (30) days of the Effective Date, Defendants shall develop and implement a formal training program, including any training materials needed for effective implementation of the training program ("Training Program"), to ensure (1) that there are sufficient staff assigned to achieve compliance with the 2015 Industrial Storm Water Permit and this Consent Decree, and (2) that these employees are properly trained to perform the required compliance activities. At a minimum the Training Program shall familiarize all employees at the Facility with the requirements of the 2015 Industrial Storm Water Permit or then applicable NPDES permit and this Consent Decree.

49.   The Training Program shall require specific training to include at least the following:

a.   <u>Non-Storm Water Discharge Training</u>. The Defendants shall train all staff on the 2015 Industrial Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are and how to detect them and prevent them.

b.   <u>BMP Training</u>. The Defendants shall train all employees on BMP implementation and maintenance to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility.

c.   <u>Sampling and Record Keeping Training</u>. Defendants shall assign

and train adequate staff necessary to collect storm water samples from each discharge location as required by this Consent Decree and the 2015 Industrial Storm Water Permit. Staff training shall include training in proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory and adequate records are kept of all sampling events and analysis results.

> d.   Visual Observation Training. The Defendants shall provide training to all individuals performing visual observations at the Facility pursuant to this Consent Decree and the 2015 Industrial Storm Water Permit and training in proper record keeping for all such visual observations.

50.   Defendants shall provide training on an annual basis, or as otherwise required to ensure compliance with the terms of this Consent Decree, by a private consultant or a representative of Defendants who is familiar with the requirements of this Consent Decree and the 2015 Industrial Storm Water Permit. The training shall be repeated as necessary to ensure that all such employees are familiar with the requirements of this Consent Decree, the 2015 Industrial Storm Water Permit, and the Facility's SWPPP and MIP. All new staff will receive this training before assuming responsibilities for implementing the SWPPP and/or MIP.

51.   The Defendants shall maintain training records to document compliance with this section, and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request. The Training Program shall be specified in the Defendants' SWPPP.

# X. STORM WATER POLLUTION PREVENTION AND MONITORING AND REPORTING PLAN

52.   Within sixty (60) days after the Effective Date of this Consent Decree, Defendants shall revise their SWPPP and their MIP to:

> a.   Incorporate fully the requirements of the 2015 Industrial Storm

Water Permit, and this Consent Decree, including but not limited to revisions to the SWPPP to specify performance of the Remedial Measures referred to in PART VII (REMEDIAL MEASURES).

b.    Identify the individuals responsible for compliance with the 2015 Industrial Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (*e.g.*, John Doe, collecting samples).

c.    Describe all BMPs and how they will be operated and/or maintained.

d.    Denote all actions taken to control the deposition of dust, particulate matter and other pollutants at the Facility.

e.    Describe where and when storm samples are to be collected and explain why the sample points are representative of off-site discharge and include a checklist that must be used by trained Facility personnel when conducting the storm water sampling required under the 2015 Industrial Storm Water Permit and this Consent Decree.

f.    Describe where and when visual inspections of the Facility are to be performed and include a visual inspection checklist that must be used by trained Facility personnel when conducting the visual observations required under the 2015 Industrial Storm Water Permit and this Consent Decree.

53.    Commenting on the SWPPP and MIP Revisions. The Defendants shall submit the revised SWPPP and MIP to LA Waterkeeper for review and comment as soon as it is completed but in any event no later than seventy-five (75) days after the Effective Date. LA Waterkeeper shall provide comments, if any, to the Defendants within thirty (30) days of receipt of the SWPPP and MIP. The Defendants shall incorporate LA Waterkeeper's comments into the SWPPP and MIP or shall justify in writing why any comment is not incorporated within thirty

23

(30) days of receiving LA Waterkeeper's comments. Any disputes over the adequacy of the revised SWPPP and MIP shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

54.  Additional Revisions to SWPPP and MIP. The Defendants shall revise their SWPPP and MIP if there are any changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility resulting from an Action Plan. The Defendants shall submit any revised SWPPP and MIP to LA Waterkeeper for review and comment within five (5) days of completion. LA Waterkeeper shall provide comments, if any, to the Defendants within thirty (30) days of receipt of any revised SWPPP and MIP. The Defendants shall incorporate LA Waterkeeper's comments into any revised SWPPP and MIP, or shall justify in writing why any comment is not incorporated within thirty (30) days of receiving comments. Any disputes as to the adequacy of the SWPPP and MIP shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION).

## XI. MITIGATION, FEES, AND COSTS

55.  Supplemental Environmental Project Funding, Reimbursement of Fees and Costs, and Compliance Monitoring Funds: within 60 days of the Effective Date, Defendants shall tender a lump sum of $350,000 to LA Waterkeeper. Payment shall be made by wire transfer or check made payable to Environmental Advocates' Attorney Client Trust Account. If payment is made by wire transfer, Environmental Advocates shall provide information on making such wire transfer payment within 10 business days of the Effective Date. If payment is by check, payment shall be sent via certified mail, return receipt requested, to the following address:

Christopher A. Sproul
Environmental Advocates
5135 Anza Street

San Francisco, California 94121

The parties agree that such lump sum payment shall be used for, in amounts at Plaintiff's discretion:

   a.  mitigation, in the form of funding to the Rose Foundation for Communities and the Environment for supplemental environmental projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants to the Los Angeles River watershed and/or Pacific Ocean waters adjoining Los Angeles;

   b.  reimbursement to help defray LA Waterkeeper's investigation fees and costs, expert fees and costs, reasonable attorneys' fees, and all other costs incurred as a result of investigating the activities at the Facility, bringing these matters to Defendants' attention, and negotiating a resolution of this action in the public interest; and

   c.  reimbursement for costs and fees associated with monitoring Defendants' compliance with this Consent Decree.

56.  <u>Action Plan Payments</u>: Any time Defendants submit an Action Plan to LA Waterkeeper as required by this Consent Decree, Defendants shall simultaneously tender an additional compliance monitoring payment in the amount of Two Thousand Five Hundred Dollars ($2,500) along with the Action Plan. Action Plan payments are to be made payable to LA Waterkeeper in the manner described in the previous paragraph.

## XII. STIPULATED PAYMENTS

58.   In the event Defendants fails to submit to LA Waterkeeper any document, report or other communication required under paragraphs 24-54 of this Consent Decree, for any report more than ten (10) days late, Defendants shall pay a per day payment of Five Hundred Dollars ($500) commencing on the eleventh (11th) day after the report due date.

59.  For every day past the date that LA Waterkeeper provided written notice

25

to Defendants that a document, report or other communication required by this Consent Decree or measure of specific performance required by this Consent Decree does not comply with the Consent Decree, and Defendants has failed to correct the non-performance or invoke the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION), Defendants shall pay a per day payment of Five Hundred Dollars ($500), unless Defendants' position prevails in Dispute Resolution.

60.    If Defendants fails to submit to any payments required under paragraphs 55-56 of this Consent Decree within five days of the date due, Defendants shall incur a Three-Hundred Dollar ($300) per day payment for each day that Defendants' payment continues to be late.

61.  Any stipulated payments pursuant to this Part shall be paid to the Rose Foundation for Communities and the Environment within fourteen (14) days of the event that precipitated the Stipulated Payment liability. Stipulated payments shall be used for projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants to the Los Angeles River watershed and/or Pacific Ocean waters adjoining Los Angeles. Defendants shall send LA Waterkeeper notice of any such stipulated payments within seven (7) days of tendering such payments.

## XIII. DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE

62.  Dispute Resolution Process: If a dispute under this Consent Decree arises, or either Party believes that a breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10) calendar days of receiving written notification from the other Party of a request for a meeting to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the violation. If the Parties fail to

26

meet and confer or the meet and confer does not resolve the issue, after at least seven days have passed after the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including bringing a motion before the U.S. District Court for the Central District of California, which shall retain jurisdiction over the Action for the limited purposes of enforcement of the terms of this Consent Decree. The Parties agree not to object to an expedited hearing schedule on any Dispute Resolution motion if one of the Parties requests one.

63.  <u>Burden of Proof</u>: In the event of any disagreement or dispute between LA Waterkeeper and Defendants over the necessity or appropriateness of implementing any particular BMP or set of BMPs, including in any formal or informal proceeding brought to enforce the terms of this Consent Decree, Defendants shall bear the burden of demonstrating that their BMPs, collectively, constitute BAT/BCT for the Facility, or that it is in compliance with the terms of this Consent Decree. LA Waterkeeper shall not be required to prove that Defendants' BMPs do not constitute BAT/BCT.

64.  <u>Litigation Costs and Fees</u>: Litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded in accord with the standard established by Section 505 of the Clean Water Act, <u>33 U.S.C. § 1365</u> and case law interpreting that standard.

**XIV. NOTICES AND SUBMISSIONS**

65.  Except as otherwise expressly provided in this Consent Decree, whenever under the terms of this Consent Decree notice is required to be given or a report or other document is required to be forwarded by one Party to another, it shall, to the extent feasible, be sent to the following individuals as electronic computer files at the e-mail addresses specified below. If a given document cannot

be e-mailed, it shall be mailed by U.S. Mail to the following addresses. Any change in the individuals designated by either Party must be made in writing to the other Parties.

As to LA Waterkeeper:

> Benjamin Harris
> Staff Attorney
> Los Angeles Waterkeeper
> 120 Broadway, Suite 105
> Santa Monica, CA 90401
> ben@lawaterkeeper.org
>
> With copies to:
>
> Bruce Reznik
> Executive Director
> Los Angeles Waterkeeper
> bruce@lawaterkeeper.org

As to the Defendants:

> John Gasparian
> American Reclamation, Inc.
> 4560 Doran Street
> Los Angeles, CA 90039
> John@socoastrec.com

## XV. MISCELLANEOUS PROVISIONS

66.    **Execution in Counterparts:**  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

67.    **Severability**:  In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected. Notwithstanding the foregoing, Section XI. (MITIGATION, FEES, AND COSTS) and Section IV. (EFFECT OF

CONSENT DECREE/RELEASE OF CLAIMS) are not severable from this Consent Decree.

68.   **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to their plain and ordinary meaning.

69.   **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

70.   **Facsimile Signatures:**  Signatures of the Parties transmitted by facsimile shall be deemed binding.

71.   **Force Majeure**:  Defendants shall not be considered to be in default in the performance of any of their Consent Decree obligations when their failure to perform is due to a "Force Majeure." A Force Majeure event is any act of God, war, fire, earthquake, flood, natural catastrophe, and restraint by court order or public authority. A Force Majeure event does not include normal inclement weather, such as anything less than or equal to a 100 year/24 hour storm event, or inability to pay. Defendants shall have the burden of establishing that a force majeure event that it could not reasonably have been expected to avoid, and which by exercise of due diligence it has been unable to overcome has precluded their compliance. Defendants shall exercise due diligence to resolve any Force Majeure event and return to compliance. If the Defendants claim existence of a Force Majeure event, they shall notify LA Waterkeeper in writing within twenty-one (21) calendar days of the date that the Defendants first knew of the event or circumstance that caused or would cause a violation of this Consent Decree. The notice shall describe the reason for the nonperformance and specifically refer to this Section. It shall describe: a) the anticipated length of time the delay may persist; b) the cause or causes of the delay; c) the measures taken or to be taken by the Defendants to prevent or minimize the delay; d) the schedule by which the

measures will be implemented; and v) the anticipated date of compliance. The Defendants shall adopt all reasonable measures to avoid and minimize such delays. Any disputes between the parties concerning the existence of a Force Majeure shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE).

72.    The parties hereto enter into this Consent Decree and submit it to the Court for their approval and entry as a final judgment.

## XVI. EFFECTIVE AND TERMINATION DATES

73.  Within three (3) days of the final signature of the Parties, LA Waterkeeper shall submit this executed Consent Decree to EPA and DOJ for a 45-day review and comment period pursuant to CWA section 505(c)(3) and 40 C.F.R. § 135.5. The Court shall not enter their judgment on consent until the expiration of this review and comment period. If EPA or DOJ requests or suggests revisions to this Consent Decree or objects to entry of this Consent Decree in the form presented, the Parties shall within ten (10) days meet and confer on whether to revise this Consent Decree in accord with the requested or suggested revisions provided by EPA or DOJ and/or otherwise to accommodate EPA or DOJ's objections. If the Parties do not mutually agree to any such revisions or modifications, the Parties shall so notify the Court and request entry of the Consent Decree in the form drafted. If the Court objects to entry of this Consent Decree in the form presented, the Parties will attempt in good faith to agree to revisions of this Consent Decree necessary so that it is acceptable to the Court.

74.      This Consent Decree shall terminate on August 31, 2027 ("Termination Date") provided that Defendants have made all monetary payments owed under the Consent Decree and there is no pending Dispute Resolution proceeding pursuant to the provisions of Part XIII (DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE). If Defendants have not made

all monetary payments owed under the Consent Decree or if there is a pending Dispute Resolution proceeding, the Consent Decree shall be extended until Defendants have made all monetary payments owed under the Consent Decree and all pending Dispute Resolution proceedings have been resolved.

75.  The Consent Decree may terminate before the Termination Date, after three Wet Seasons, provided that in each of those three Wet Seasons the following conditions are met: (1) Defendants have sampled the number of Qualifying Storm Events required by the Consent Decree unless a lack of Qualifying Storm Events has precluded Defendants from meeting this target; (2) in any case, Defendants have sampled at least two Qualifying Storm Events in each Wet Season; (3) all sample results from all Qualifying Storm Events in these Wet Seasons show pollutant levels below NALs, NELs and Basin Plan levels listed in Exhibit 1; (4) Defendants have complied with all monitoring, sampling, and reporting obligations under the Consent Decree and have made all required monetary payments under the Consent Decree; (5) no dispute resolution proceeding is pending.

76.  In order for the Consent Decree to be terminated early under the above paragraph, Defendants must provide to LA Waterkeeper a notice of proposed termination that includes all the data necessary to show that the five above terms have been met. LA Waterkeeper shall have thirty (30) days upon receipt of the notice of proposed termination to accept or reject the notice of proposed termination. Any disputes about whether Defendants satisfied the conditions for early termination shall be resolved pursuant to the Dispute Resolution provisions of Part XIII (DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT DECREE), and the Consent Decree would remain in effect until the dispute is resolved or until the Termination Date, whichever comes first. If LA Waterkeeper accepts the notice of proposed termination, then the parties shall file a joint notice or stipulation with the Court requesting the Court to terminate the Consent Decree.

31

1

2

**IT IS SO ORDERED:**

3

4

5   Date:      December 5, 2022

6                                                    Honorable Dean D Pregerson
                                                     United States District Judge
7                                                    Central District of California

8

    APPROVED AS TO FORM:
9

10  ENVIRONMENTAL ADVOCATES

11

12
    Dated:      September 27, 2022          By: _Christopher a. sproul_
13
                                            _____
14                                          Christopher Sproul
                                            Attorney for Plaintiff
15

16  TYSON & MENDES LLP

17

18  Dated:    September 28    2022          By: _Candice Hamant_

19                                          _____
                                            Candice Hamant
20                                          Attorney for Defendants

21

22  APPROVED AS TO CONTENT:

23

24
    Dated:    September 7, 2022             By:
25
                                            _____
26                                          Bruce Reznik
                                            For Plaintiff
27                                          Los Angeles Waterkeeper

28

                                32

1

2   Dated:   *09-12* —— 2022                    By: _____

3                                               John Gasparian

4                                               For Defendants

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33

No. 21-CV-1140-DDP-(Ex)                                    [Proposed] Consent Decree

<u>**Exhibit 1**</u>

| Parameter | Value |
|---|---|
| Total Suspended Solids | 100 milligrams per liter ("mg/L") |
| Oil and Grease | 15 mg/L |
| pH | Between 6.5 s.u. and 8.5 s.u. |
| Aluminum | .75 mg/L |
| Copper | .0332 mg/L |
| Iron | 1.0 mg/L |
| Lead | 0.94 mg/L |
| Zinc | 159 mg/L |
| Nitrite + Nitrate | .68 mg/L |

## **Exhibit 2**

| Parameter | Value |
|---|---|
| Copper | .013 mg/L |
| Lead | 0.94 mg/L |
| Zinc | .120 mg/L |